UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-cv-21735-GAYLES

**TROPICAL FRUIT TRADING, INC.,**
        **Plaintiff,**

v.

**AGROFARMS, LLC, et al.,**
        **Defendants.**
_____/

## ORDER

**THIS CAUSE** comes before the Court on Plaintiff Tropical Fruit Trading, Inc.'s Motion for Preliminary Injunction [ECF No. 4]. The Court has reviewed the briefs, the arguments of counsel, the record in this case, and the applicable law. Because the Court finds that the Plaintiff has not met its burden to establish that irreparable injury will be suffered in the absence of an injunction, the motion shall be denied.

**I.   BACKGROUND**

In this action, Plaintiff Tropical Fruit Trading, Inc. ("Tropical"), alleges that it is an unpaid supplier of perishable agricultural commodities that seeks relief under, and specific enforcement of, the statutory trust set forth under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499 *et seq.* ("PACA"), and that statute's implementing regulations, 7 C.F.R. § 46.1 *et seq. See generally* Compl. Tropical seeks this relief from Defendants AgroFarms, LLC ("AgroFarms"), and Inaho, LLC ("Inaho"), as well as the individual Defendants (all officers of these companies),[1] arising from allegedly unpaid produce transactions dating from October or November 2015 through March 2016.

According to the evidence and testimony presented to this Court, as a result of oral dis-

---

[1] Two officers of AgroFarms—Oscar K. Adames and Henry Villareal—and three officers of Inaho—Antonio Narvaez, Angelica M. Hoyos, and Alicia Diaz. *See* Compl. ¶¶ 5-11.

cussions between Tropical, AgroFarms, and Inaho, Tropical agreed to supply produce to AgroFarms and Inaho for the Defendants to sell to AgroFarms customers. The Defendants would collect the proceeds from those sales and remit them to Tropical, and the profits from those transactions would be split, with 50% going to Tropical, 25% to AgroFarms, and 25% to Inaho. *See* Hr'g Tr. I-33:11–20, I-58:17–59:8.[2] No written agreement between these parties existed during the transactions at issue. Hr'g Tr. I-94:2–4; Hr'g Tr. II-46:22–47:23, II-59:21. Tropical substantially funded the operation and paid for the cost of produce, shipment, ocean freight, and customs. Hr'g Tr. I-33:11–20, I-58:17–59:8; Hr'g Tr. III-99:1–25.

From November 2015 through January 2016, Tropical delivered several shipments of produce to AgroFarms. Hr'g Tr. I-51:20–25, I-97:15–20. AgroFarms sold the produce delivered by Tropical, and the Defendants collected the proceeds resulting from those sales. Hr'g Tr. I-39:1–2, I-90:16–25; Hr'g Tr. II-55:12–20. AgroFarms then deposited lump sum amounts into Tropical's accounts, beginning in November 2015. Hr'g Tr. III-59:14, III-70:13, III-76:23. Tropical delivered invoices for this produce to AgroFarms, but Inaho never received any invoices from Tropical for any of the transactions at issue. Hr'g Tr. III-36:25.

AgroFarms has not fully paid Tropical for the produce that Tropical delivered to AgroFarms. The Defendants, through the testimony of Henry Villareal, AgroFarms' principal, admitted liability to Tropical in the amount of $217,000, representing the amount of unpaid sales proceeds that, according to him, are due and owing to Tropical. Hr'g Tr. I-118:3–7; Hr'g Tr. II-13:22–25. Tropical disputes the amount, claiming that it is owed at least $330,000. Hr'g Tr. I-7:1–4; Hr'g Tr. II-9:13–19. The Defendants have not separated the proceeds that they received from the third-

---

[2] The evidentiary hearing on the Plaintiff's Motion for Preliminary Injunction was held over a period of three non-consecutive days—May 26, June 2, and June 6, 2016. For reference, the Court will use "Hr'g Tr. I-1" through "Hr'g Tr. I-146" to cite to the transcript from the first day of the hearing; "Hr'g Tr. II-1" through "Hr'g Tr. II-100" to cite to the hearing from the second day of the hearing; and "Hr'g Tr. III-1" through "Hr'g Tr. III-118" to cite to the transcript from the third day of the hearing.

party customers; Villareal testified that any money needed to pay Tropical would come from AgroFarms' receivables. Hr'g Tr. II-47:18–25. The parties also dispute the propriety of the invoices, and whether any or all of those invoices fall under PACA requirements.

Tropical filed a nine-count Complaint against the Defendants on May 16, 2016, and filed the instant preliminary injunction the following day, which was combined with a motion for temporary restraining order. The Court issued a temporary restraining order on May 17, 2016 [ECF No. 5]. The Court then heard evidence and testimony from both sides on the motion for preliminary injunction in late May and early June 2016. Following these hearings, the Court ordered the Defendants to file a response to Tropical's motion and Tropical to file a reply to that response. Those briefs were filed on June 27, 2016, and July 8, 2016, respectively. The motion is now ripe for ruling.

## II.   LEGAL STANDARD

"A preliminary injunction may be granted to a moving party who establishes '(1) a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.'" *United States v. Alabama*, 691 F.3d 1269, 1281 (11th Cir. 2012) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)). "A preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant clearly carries its burden of persuasion on each of these prerequisites." *GeorgiaCarry.org, Inc. v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1322 (11th Cir. 2015) (quoting *Suntrust Bank v. Houghton Mifflin Co.*, 252 F.3d 1165, 1166 (11th Cir. 2001) (per curiam)); *see also Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975) (stating that the grant of a preliminary injunction "is the exception rather than the rule" and the plaintiff must clearly carry the burden of persuasion).

**III.    DISCUSSION**

The Court turns to the second prerequisite first, as it is dispositive of this motion. A showing of irreparable injury is "the sine qua non of injunctive relief," *Ne. Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (citation and internal quotation marks omitted), for a preliminary injunction may not be entered "based only on a possibility of irreparable harm," *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "Significantly, even if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). "[I]t is settled law that '[a]n injury is 'irreparable' only if it cannot be undone through monetary remedies.'" *Great Am. Ins. Co. v. Fountain Eng'g, Inc*, No. 15-10068, 2015 WL 6395283, at *3 (S.D. Fla. Oct. 22, 2015) (quoting *Snook v. Trust Co. of Ga. Bank of Savannah, N.A.*, 909 F.2d 480, 487 (11th Cir. 1990)); *accord Roland Mach. Co. v. Dresser Indus., Inc.*, 479 F.2d 380, 386 (7th Cir. 1984) ("The requirement of irreparable harm is needed to take care of the case where although the ultimate relief that the plaintiff is seeking is equitable . . . he can easily wait till the end of trial to get that relief. Only if he will suffer irreparable harm—that is, harm that cannot be prevented or fully rectified by the final judgment after trial—can he get a preliminary injunction."), quoted in *Great Am. Ins. Co.*, 2015 WL 6395283, at *2 n.2.

In the PACA context, a plaintiff's failure to submit any evidence of irreparable harm other than a defendant's non-payment can be sufficient grounds on its own to deny a preliminary injunction. *See D'Arrigo Bros. Co. of N.Y., Inc. v. MLPP LLC*, No. 15-2041, 2015 WL 3526999, at *4 (S.D.N.Y. June 3, 2015). In *D'Arrigo Bros.*, the district court denied the plaintiff's motion for preliminary injunction in a PACA case where the plaintiff could not show that it was likely to suffer irreparable harm because it failed to submit any evidence thereof "other than its unsupported

4

assertion that, since Defendants have not yet paid for the produce[,] Defendants may continue to dissipate that PACA trust." *Id.* The court found that the "sole factual assertion relating to irreparable harm" was a single, conclusory sentence in the plaintiff's motion that "[i]n the absence of injunctive relief, certain of the PACA trusts received by [the defendant], and of which the plaintiff are the beneficiaries, will be used by [the defendant] to satisfy other debts, or otherwise dissipated." *Id.* Although the defendants had submitted some other evidence demonstrating their willingness to pay, including the representation that they agreed to start making weekly payments to a trust account, the court ultimately found, based on the limited factual record, that the plaintiff simply failed to submit evidence of irreparable harm other than the defendants' non-payment. *Id.*

Furthermore, and more critically, if a plaintiff can be adequately compensated by money damages, then that plaintiff cannot demonstrate the likelihood that, unless a defendant segregates trust assets, it will suffer irreparable harm. *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir. 1990); *see also Grasso Enters., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040 (8th Cir. 2016) ("It is well established that irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." (citation omitted)). In *JSG*, the defendant refused to pay the plaintiff for a shipment of tomatoes that the defendant claimed was late and of a lower grade than expected. As a result, the plaintiff filed a PACA claim and moved for a preliminary injunction that would require the defendant to deposit the agreed-upon price of the tomato shipment into a segregated account. The district court granted the motion. On appeal, the Second Circuit reversed, holding that the plaintiff failed to show a likelihood of irreparable injury. The court noted that "[i]rreparable injury is one that cannot be redressed through a monetary award," and that "[w]here money damages are adequate compensation a preliminary injunction should not issue." *JSG*, 917 F.2d at 80 (citing *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979) (per curiam)).

5

Because the plaintiff could be adequately compensated by money damages, a preliminary injunction was improper.

Turning now to the case at bar, Tropical has submitted the following evidence in support of its claim of irreparable injury. In a Declaration attached to the motion for preliminary injunction, Javier Naranjo, Tropical's principal, attested that the Defendants "have dissipated and will continue to dissipate PACA trust assets" and "have diverted those funds for their own use and for other purposes in violation of PACA." Naranjo Decl. ¶ 22. He further states, generally, that "[t]he failure of produce purchasers to pay promptly causes substantial harm to Tropical's business because it endangers Tropical's ability to pay its own suppliers." *Id.* ¶ 23. And, finally, he states that "Tropical has suffered and will continue to suffer irreparable injury, loss, and damages in the absence of preliminary injunctive relief pending the outcome of this case." *Id.* ¶ 24. At the evidentiary hearing, Tropical's counsel asked Naranjo about these passages in his Declaration, which resulted in the following exchange:

> Q. Mr. Naranjo, in your affidavit in support of the motion for temporary restraining order, you indicated that your company had been irreparably harmed. Can you explain what you mean by that?
>
> . . .
>
> A. We -- in the produce industry, the margins are minimal and we work with fast turnover, and everything just about gets sold on credit, no matter how big the customer is, big or small, except for the foot traffic. We do depend on a line of credit to import and prepay the product before it arrives and so we -- our line of credit came to be renewed at the end of March. They sent an auditor to our office. We could not hide the fact that there were over $400,000 unpaid from AgroFarms and all the customers they manage. We couldn't hide it so we got a -- basically, they have not renewed our line of credit. They just extended it for 60 days until we settle this case and see how the outcome is.
>
> Q. If you don't get it extended or renewed, will it run you out of business?
>
> A. There is a likelihood that it will run us out of business.

Hr'g Tr. I-57:2–25 (objection omitted).

Upon review of the record, the Court concludes that Tropical has failed to "clearly carry

6

the burden of persuasion" that it would be irreparably harmed in the absence of an injunction. *GeorgiaCarry.org*, 788 F.3d at 1322. As in *D'Arrigo Bros.*, Tropical has failed to adduce concrete evidence in support of its claim of irreparable injury other than that the Defendants have not paid for at least $217,000 worth of produce (the amount Villareal admitted he owed). Naranjo's statement that "[t]he failure of produce purchasers to pay promptly causes substantial harm to Tropical's business because it endangers Tropical's ability to pay its own suppliers," Naranjo Decl. ¶ 23, is generic, conclusory, and unsupported by evidence, as is his testimony regarding the line of credit and the "likelihood" that Tropical will be run out of business. Naranjo testified about a sixty-day extension on Tropical's line of credit that was granted at the end of March 2016. That sixty-day extension had likely expired by the time the Court held the hearing on this motion in late May and early June 2016, yet Naranjo made no other mention of the line of credit, its current status, or what effect (if any) it was having on Tropical's business. "[A] preliminary injunction will not be issued simply to prevent the ***possibility*** of some remote future injury." *Winter*, 555 U.S. at 22 (emphasis added) (citation omitted). The Court will not find a showing of irreparable injury based on unsupported statements of a generalized "likelihood" that Tropical's business could be affected.

Also, as in *JSG*, Tropical can be adequately compensated by money damages. Villareal does not dispute that the Defendants owe Tropical a substantial amount of funds. He has already admitted liability to Tropical in the amount of $217,000, so what remains to be determined is the amount of money the Defendants actually owe.[3] The fact that Tropical's injury can be "undone through monetary remedies" militates strongly against the imposition of a preliminary injunction. *See Ne. Fla Chapter of Ass'n of Gen. Contractors*, 896 F.2d at 1285.

Finally, as for Naranjo's statement that the Defendants have allegedly dissipated PACA

---

[3] The Court reminds Tropical that it may promptly move for summary judgment on liability based on Villareal's admission.

trust assets (assuming *arguendo* that the funds at issue are subject to PACA), while dissipation *can* constitute irreparable harm "if it makes ultimate recovery unlikely," *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 22 F.3d 132, 140-41 (3d Cir. 2000), Tropical has adduced no evidence to support the contention here that ultimate recovery from the Defendants is unlikely. Tropical argues in its motion that, "[c]learly the harm here is immediate if Defendants are out of business and Tropical is precluded from collecting payment and enforcing its trust benefits." Pl.'s Mot. at 11. But after three days of testimony, there was no evidence that AgroFarms or Inaho were on the verge of going out of business. In fact, Villareal testified that he planned to pay the money AgroFarms owes Tropical through AgroFarms' receivables. *Cf., e.g.*, *Classic Harvest LLC v. Freshworks LLC*, — F. Supp. 3d —, 2015 WL 9593621, at *10 n.16 (N.D. Ga. Dec. 31, 2015) (finding that the plaintiff would suffer irreparable harm in the absence of an injunction because the facts showed that the trust assets had been dissipated and, given that a third party entity had closed, the threatened injury of being unable to recover the assets was substantial); *Edward G. Rahll & Sons, Inc. v. Zach*, No. 08-1384, 2008 WL 3853311, at *1 (M.D. Pa. Aug. 14, 2008) (concluding that the plaintiff established irreparable harm "because absent injunctive relief the [defendants] are likely to continue to dissipate trust assets irrecoverably" where the defendants were no longer operating their produce business from which the trust assets were being dissipated (internal punctuation marks omitted)). Tropical contends that "this Court cannot restore the loss of long standing business relationships with creditors, suppliers, and customers where Tropical has not received payment from Defendants and therefore cannot satisfy its own obligations." *Id.* That may well be true, but, again, Tropical has provided no evidence to substantiate these alleged potential losses of business relationships.

An injunction "should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). In the context of the analysis of this motion specifically,

8

the "key word in th[e] consideration" of whether the Plaintiff has established irreparable injury "is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy . . . , are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). Accordingly, after careful consideration, the Court concludes that Tropical has failed to establish this prerequisite to the issuance of a preliminary injunction. Because a movant must carry the burden on all four prerequisites, *GeorgiaCarry.org*, 788 F.3d at 1322, the Court need not analyze the other three.

*   *   *

As a final note, the Court is troubled by the Defendants' alleged failure to comply with the Court's Temporary Restraining Order, which directed them to deposit funds into the Court registry and to provide an accounting to Tropical's counsel. *See* Pl.'s Motion for Order to Show Cause [ECF No. 48]. That said, there are still material questions of fact that remain unanswered related to the applicability of PACA, involving (1) the basic terms of the parties' original agreement, including price, quantity, calculation of costs, and division of proceeds; (2) how the invoices were generated by Tropical and received by the Defendants; and (3) whether notice sufficient to invoke PACA protection was timely or properly given. Though the Court does not address these questions in its Order today, given its finding that the lack of irreparable harm is dispositive of the instant motion, their resolution is integral to the ultimate resolution of this case.

### IV.   CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

(1)   the Plaintiff's Motion for Preliminary Injunction [ECF No. 4] is **DENIED**;

(2)   the Temporary Restraining Order, entered May 17, 2016 [ECF No. 5], as amended by the Court's Order of June 6, 2016 [ECF No. 26], is **LIFTED**;

(3) the $17,299.80 deposited by the Defendants into the Court Registry on May 25, 2016, shall remain in the Registry pending the Court's decision on the Plaintiff's Motion for Order to Show Cause [ECF No. 48]; and

(4) the Defendants shall **ANSWER OR OTHERWISE RESPOND** to the Complaint by **September 1, 2016**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 17th day of August, 2016.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE